**ITAR–TASS RUSSIAN NEWS AGENCY, Itar–Tass USA, Inc., Argumenty I Fakty, Moskovskiye Novosti, Komsomolskaya Pravda, Fromer & Associates, Inc., Express Gazeta, Nezavisimaya Gazeta, and the Union of Journalists of Russia, Plaintiffs,**

v.

**RUSSIAN KURIER, INC., a/k/a Kurier Inc., a/k/a Kurier Russian Weekly Newspaper, Oleg Pogrebnoy, Sverdlov, Inc., a/k/a Sverdlov Video, Veniamin Sverdlov, Linco Printing, John & Jane Does 1–10, Defendants.**

No. 95 Civ. 2144.

United States District Court,
S.D. New York.

May 13, 1995.

---

**1122**

Julian H. Lowenfeld, New York City, for plaintiffs Itar–Tass Russian News Agency, Itar–Tass USA, Inc., Argumenty i Fakty, Moskovskie Novosti Komsomolskaya Pravda, Express Gazeta, Fromer & Associates, Inc., Nezavisimaya Gazeta, Union of Journalists of Russia.

Joel K. Bohmart, Bohmart & Sacks, P.C., New York City, for defendants Russian Kurier, Inc.

## OPINION

KOELTL, District Judge:

This is a copyright infringement action in which the plaintiffs seek preliminary injunctive relief enjoining the defendants from unauthorized copying for profit of the publications of the news organization plaintiffs.[1] The news organization plaintiffs are members of the Russian press. They have sued the defendant Russian Kurier, Inc. and others for allegedly participating in the infringement of their rights in news articles and reports by copying the articles without authorization and publishing them in the United States in a newspaper called Kurier.

The present motion asks this Court to enjoin the continued open and blatant copying of copyrighted articles—complete with photographs, headlines, and, in some cases, bylines—from the plaintiff publications by the defendant publication. In their argument seeking the injunction, the plaintiffs rely on recently enacted Russian copyright law and request this Court's protection because this nation recognizes the copyright protections afforded by other nations under the Berne Convention. The defendants do not deny that they have stolen articles, that they have no permission from anyone to copy them, and that they have lifted them, type face and all, from the plaintiff publications, but the defendants argue that only individual reporters can sue. Therefore, the defendants have asserted the right to continue to electronically cut and paste the articles that appear in the plaintiff publications and pass them off as their own. The defendants have underestimated the protections afforded by the laws of the Russian Federation and the United States for copyrighted materials.

For the reasons stated below, the Court finds that the plaintiffs are entitled to preliminary injunctive relief preventing Russian Kurier, Inc. and its agents from copying copyrighted news articles that originally appear in the newspapers and news agency reports published by the plaintiffs.

The complaint identifies the plaintiffs as follows. Plaintiff Itar–Tass Russian News Agency, formerly known as the Telegraph Agency of the Soviet Union (TASS), is a privately owned news gathering corporation centered in Moscow. Plaintiff Itar–Tass, USA, Inc., a New York corporation, is its wholly owned subsidiary with its principal place of business in New York, New York. Plaintiffs Argumenty i Fakty, Komsomolskaya Pravda, Express Gazeta, Moskovskie Novosti ("Moscow News"), and Nezavisimaya Gazeta are private newspapers with their principal places of business in Russia. The newspapers also distribute and sell papers in the United States. Tass has contracts with newspapers and news agencies in the United States which subscribe to its service. Plaintiff Fromer and Associates, Inc., a New York corporation, is the exclusive distributor of Komsomolskaya Pravda and Express Gazeta in the United States. Plaintiff Union of Journalists of Russia is the Russian Federation's union of accredited print and broadcasting media journalists.[2]

---

1. The Court issued a temporary restraining order on April 19, 1995 after hearing argument from the parties. The order has been extended twice with the consent of the defendants that have appeared in the action and it will expire on May 13, 1995 at 5:00 p.m.

2. It is possible that members of the Union of Journalists of Russia are holders of copyrights that are alleged to have been infringed by the plaintiffs in this action. However, the plaintiffs do not seek to enforce any such copyrights on behalf of these authors in the context of the motion for a preliminary injunction, because they have not established the union's organizational standing to sue to enforce the rights of its members. That issue of standing will be an issue as this lawsuit proceeds. See Hunt v. Washing-

Defendant Russian Kurier, Inc., also known as Kurier, Inc. and Kurier Russian Weekly Newspaper, Inc., is the producer and seller of Kurier. Defendant Oleg Pogrebnoy is its president. Defendant Linco Printing has printed the newspaper Kurier for Russian Kurier, Inc.

The remaining defendants are in default, because they have failed to appear in this action after having been given repeated notice of the hearings on the temporary restraining order and the preliminary injunction. Defendant Sverdlov, Inc., also known as Sverdlov Video, is allegedly a New York corporation engaged in the business of selling and distributing Russian language newspapers, including Kurier. Defendant Veniamin Sverdlov is allegedly its president and sole owner.

### I.

The Court held a preliminary injunction hearing in this matter on April 18 and 26 and May 11 and 12, 1995. The plaintiffs introduced over sixty alleged examples of newspaper articles that were originally published in the plaintiffs' publications and that subsequently appeared in Kurier, often in the same typeface and accompanied with the same photographs and headlines. A summary of this evidence prepared by counsel for the plaintiff and reviewed for accuracy by the Court is appended to this Opinion as Appendix A.[3] The Court also received testimony from authors who claimed to have had articles copied without authorization by Kurier. Extensive expert testimony was offered by affidavit and in person regarding the copyright rights of Russian newspapers under Russian law.

On the basis of the evidence presented at the hearing on the application for a preliminary injunction, and after reviewing the extensive documentary evidence and assessing the credibility of the witnesses, the Court finds the following facts. Defendants Russian Kurier, Inc. and Oleg Pogrebnoy pro-duced, sold, and distributed the news articles appearing in the newspaper Kurier, that the defendants have introduced as portions of exhibits 3–67. These articles are either identical or substantially similar to articles previously published in the plaintiffs' newspapers and reports. *See* Appendix A. In most instances they share the same typeface, layout, headline, and accompanying photographs. *See* Appendix A. Russian Kurier, Inc. and Oleg Pogrebnoy copied such articles for publication in Kurier without obtaining authorization from the plaintiffs or the individual authors of the articles. Their intention was to profit from the fruits of the plaintiffs' labors. They did not compensate the plaintiffs for the use of the articles nor did they disclose the origin of the articles in Kurier, though many of the articles contained the same byline as the originals. Their newspaper, which publishes limited amounts of original material, was thus able to generate sales of approximately $600,000 per year. Aff. in Opp., Ex. B.

### II.

To prevail on a motion for a preliminary injunction, the party requesting relief must show:

'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'

*Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979)). In the present case, the plaintiffs have shown irreparable harm and a likelihood of success on the merits. In addition, the balance of the hardships tips decidedly in their favor.

■ The plaintiffs will be irreparably harmed by the continuation of the copying by

---

ton *State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

**3.** Because the plaintiff did not present evidence of copies from Express Gazeta and Nezavisimaya Gazeta, the preliminary injunction does not cov-er those publications. However, those newspapers are plaintiffs in this action and can continue to seek damages and equitable relief for copying of their copyrighted publications.

Kurier of their copyrighted articles. The number of sales that the plaintiffs would lose to Kurier is not readily calculable. However, there was persuasive evidence that the plaintiff publications have actually lost sales because of efforts by Kurier to get distributors to purchase its publication and not the plaintiffs'. Defendant Pogrebnoy admitted telling stores that sell Kurier that he did not want any other Russian papers on the same shelf, but asserted that his reason for doing so is that he did not want to be associated with communist newspapers. Moreover, the absence of published attributions by Kurier as to the origin of copied articles damages the reputation of the plaintiff newspapers in significant ways. Reporters testified that their reputations were affected by having their names linked to Kurier and certainly publications have an interest in protecting the reputation and integrity of their writers.

■ Even if this were not so, in copyright cases if "a prima facie case of copyright infringement can be shown, the allegations of irreparable injury need not be very detailed, because such injury can normally be presumed when a copyright is infringed." *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977) (citations omitted), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Fisher–Price, Inc. v. Well–Made Toy Mfg.*, 25 F.3d 119, 124 (2d Cir.1994) ("Nor-

mally, when a copyright is infringed, irreparable harm is presumed; this is because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways.") (citations omitted); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Rosenfeld v. W.B. Saunders, a Div. of Harcourt Brace Jovanovich, Inc.*, 728 F.Supp. 236, 247 (S.D.N.Y.), *aff'd*, 923 F.2d 845 (2d Cir.1990) (Table).[4]

■ A claim of copyright infringement consists of only two elements. The plaintiff must show that the plaintiff owns a valid copyright and that the defendant has engaged in unauthorized copying.[5] *Hasbro*, 780 F.2d at 192; *Jones v. CBS, Inc.*, 733 F.Supp. 748, 752 (S.D.N.Y.1990). The copying must be shown to be so extensive that there is a substantial similarity between the defendant's work and the protectible elements of the plaintiff's work. *Fisher–Price*, 25 F.3d at 122–23. In this case, substantial similarity is not an issue, because the allegedly infringing copies are either identical to the articles in the plaintiffs' newspapers or the discrepancies are so small that it is unquestionable that the articles are substantially similar.

■ In fact, no part of the copying element of the claim is in controversy in this action, because defendants Russian Kurier,

---

4. The presumption of irreparable injury will fade if a copyright holder unreasonably delays prosecution of an infringement claim. *Fisher–Price*, 25 F.3d at 124. *Cf. Living Media India Limited v. Parekh*, No. 92 Civ. 8079, 1994 WL 68193 at *2 (S.D.N.Y. Feb. 28, 1994) (finding that laches is not a defense to a copyright infringement claim). There is not unreasonable delay in this case. A substantial number of the alleged infringements occurred within the last two months. *See* Appendix A. The recent Russian Copyright Law and Russia's accession to the Berne Convention combined with the dramatic nature of changes in Russian institutions including the press make wholly understandable any delay in bringing the current action. Moreover, there is no prejudice resulting from any delay in this case as required by the doctrine of laches. *See Living Media*, 1994 WL 68193 at *3.

5. Section 106 of Title 17 of the United States Code provides, in part, that:
Subject to sections 107 through 120, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords ...
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.
17 U.S.C. § 106. *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984) ("[T]he Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies [citing § 106] ... 'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, 'is an infringer of the copyright.' ") (citing § 501(a)).

Inc. and Oleg Pogrebnoy do not claim to have obtained any authorization from anyone to publish the articles that they have copied into Kurier. They rest their defense in this case on the allegation that while they have no rights to the works that they have copied, neither do the plaintiffs. They argue that the plaintiffs do not possess rights in the copied works, but that the rights are possessed solely by the individual authors of the works. The following analysis of whether the plaintiff news organizations possess protectible interests in their newspapers and reports, the only element of the infringement claim at issue, is pursued for the purpose of this motion for a preliminary injunction to evaluate the plaintiff's likelihood of success on the merits and to determine whether they have raised sufficiently serious questions going to the merits to make them a fair ground for litigation.

 A certificate of copyright registration is prima facie evidence of the existence of a valid copyright. *Rosenfeld,* 728 F.Supp. at 247; 17 U.S.C. § 410(c).[6] The plaintiffs have offered proof that prior to the commencement of this action they filed registrations for the allegedly copied works that were published prior to March 13, 1995. Defendants Russian Kurier, Inc. and Oleg Pogrebnoy argue that the registration forms offered by the plaintiffs do not entitle the plaintiffs to the same presumption of validity as is afforded by an actual certificate of copyright registration and that the plaintiffs incorrectly represented the authorship of the works on the forms, because they filed the registrations on behalf of the publications and failed to check the box "works for hire." The plaintiffs have yet to receive the certificates of copyright registration for which they applied.[7] In any case, the registrations are not directly relevant to the present application for a preliminary injunction because the preliminary injunction is directed at preventing the continued and ongoing publication of the copyrighted works after March 13, 1995.

With regard to the works in evidence published after March 13, 1995 and the future works of the plaintiffs which would be protected by any preliminary injunction, the plaintiffs seek to prove their entitlement to the protection of the copyright laws by reliance on the Berne Convention rather than copyright registrations pursuant to the Copyright Act. March 13, 1995 is the date that Russia effectively acceded to the convention to which the United States was already a signatory. The Berne Convention provides that works copyrighted in signatory foreign countries and written by nationals of those countries or the United States are to be given copyright protection under United States law if first published in a nation adhering to the convention. *See Living Media India Limited v. Parekh,* No. 92 Civ. 8079, 1994 WL 68193 at *2 (S.D.N.Y. Feb. 28, 1994); 17 U.S.C. § 101.[8] The plaintiffs have demonstrated that the allegedly infringed works were first published in the United States or Russia and it appears likely that the authors of a significant number, if not all, of the works are Russian nationals. There-

---

6. Section 410(c) of Title 17 of the United States Code states:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court. 17 U.S.C. § 410(c).

7. *See Apple Barrel Prods., Inc. v. Beard,* 730 F.2d 384, 386–87 (5th Cir.1984) (finding that the requirements of § 411 are satisfied when one proves "payment of the required fee, deposit of the work in question, and receipt by the Copyright office of a registration application") (citing 2 Nimmer on Copyright § 7.16[B][1]); *Wilson v.*

*Mr. Tee's,* 855 F.Supp. 679, 682 (D.N.J.1994) (same).

8. Section 101 provides in relevant part that:

> A work is a "Berne Convention work" if—
> (1) in the case of an unpublished work, one or more of the authors is a national of a nation adhering to the Berne Convention, or in the case of a published work, one or more of the authors is a national of a nation adhering to the Berne Convention on the date of first publication;
> (2) the work was first published in a nation adhering to the Berne Convention, or was simultaneously first published in a nation adhering to the Berne Convention and in a foreign nation that does not adhere to the Berne Convention. . . .
> 17 U.S.C. § 101.

fore, the Court finds that the plaintiffs have shown a substantial likelihood that the allegedly infringed upon works introduced into evidence that were published after March 13, 1995 are Berne Convention works under 17 U.S.C. § 101 and that the future works of the plaintiffs are likely to be Berne Convention works as well. Indeed the defendants have not contested that the publications are Berne Convention works.

### III.

■ Given that the news organization plaintiffs attempt to show their rights in present and future news articles by reliance on the Berne Convention rather than direct reliance on the Copyright Act, the central question on this application for a preliminary injunction is whether the newspaper plaintiffs possess rights to the articles that they publish under Russian law. *Living Media India Limited,* 1994 WL 68193 at *2. If the papers have rights under Russian copyright law, then they are entitled to protection under United States copyright law and, given the undisputed, unauthorized copying by defendants Russian Kurier, Inc. and Oleg Pogrebnoy, such protection would clearly entitle them to relief.

The Court has been assisted in this case by two experts on Russian copyright law. The plaintiffs' expert, Professor Vratislav Pechota, a distinguished expert on Russian law and intellectual property who has in fact translated the copyright law into English, represented that case law on the Russian Federation's Law on Copyright and Neighboring Rights, which was enacted in 1993, is virtually nonexistent. He relied on only one judicial opinion, an advisory opinion of the Judicial Chamber for Media Disputes of the President of the Russian Federation. The defendants' expert, Professor Peter B. Maggs, also an eminent scholar, did not directly rely on any judicial authority. Both experts relied on legal treatises, but none of the commentary cited was clearly dispositive of the most critical issues in this case. The statute has not authoritatively been interpreted by any

Russian Court. The statute is intended to protect intellectual property rights in a free market economy, but, as Professor Pechota testified, the statute has roots in the prior communist system where the state ran all publications and dictated the rights of publications and authors. Having carefully reviewed the Law on Copyright and Neighboring Rights, the Court finds, for the reasons stated below, that the plaintiffs have shown a likelihood of success on their claim that they possess a copyright interest under Russian law that has been violated by the defendants.

Article 9, ¶ 1 of the Russian Federation Law on Copyright and Neighboring Rights sets forth the basic principle that, "A scientific, literary or artistic work is eligible for copyright by virtue of the mere fact of its creation. The origin and exercise of copyright shall not require either registration of the work or the performance of any other act or formality." Although no registration or use of copyright sign is necessary to acquire rights to a work, the plaintiffs demonstrated that copyright notices were present.

Article 8 excludes from copyright protection "communications concerning events and facts that have informational character." [9] The most reasonable interpretation of Article 8 is that works that communicate both facts and original commentary are protectable. Advisory Opinion Number 4 of the Judicial Chambers for Media Disputes of the President of the Russian Federation of 14 October 1994, Moscow, relied on by the plaintiffs, reached this conclusion. It found that "Reports of events and facts of an informative character, in accordance with Article 8, are not objects of copyright law. In cases where the material goes beyond reports of informative character, in other words, it contains commentary, analysis or is the product of creative activity of others beside the author, the material becomes the object of copyright." The testimony and evidence indicates that the allegedly infringed upon articles contained commentary and analysis as well as the relation of events and facts of an informative character.

9. Similarly, Article 2, ¶ 8 of the Berne Convention provides that, "The protection of this Convention shall not apply to news of the day or to

miscellaneous facts having the character of mere items of press information."

Articles 15 and 16 of the Russian Law on Copyrights provide Moral Rights and Economic Rights, respectively, to the author of a work. Article 4 provides that only a natural person can be an author. Consequently, for an organization such as a publisher to acquire rights to a work, there must be a transfer from an author pursuant to the provisions of the copyright law providing for contractual assignments or there must be a specific provision of the law allowing for the vesting of such rights in such an entity.

■ Article 14, ¶ 2, "Copyright in a Service–Related Work," provides an example of the latter possibility. It vests in employers the exclusive right to exploit works [10] produced by their employees in the scope of their employment, unless the right is otherwise assigned by contract.[11] This provision standing alone would be sufficient to give the plaintiff newspapers the exclusive right to exploit their employee's works. However, it is qualified by Article 14, ¶ 4, which provides that:

> The provisions of this Article shall not apply to the making, in the course of duty obligations or the performance of an assignment expressly given by the employer, of encyclopedias, encyclopedic dictionaries, collections of scientific works—published in one or in several installments—newspapers, magazines and periodical publications (section 2 of Article 11 of this Law).

As explained below, Article 11, section 2, to which Article 14 refers, gives to the publisher of a newspaper the exclusive right to exploit the newspaper as whole. The plaintiffs' expert conceded that Article 14 does not apply to newspapers, but convincingly argued that it does apply to press agencies. He relied on Advisory Opinion Number 4 of the Judicial Chambers for Media Disputes of the Presi-

dent of the Russian Federation of 14 October 1994, Moscow. That opinion concluded that Article 14 is applicable to employees of Itar–Tass Russian News Agency, a plaintiff in this action. Therefore, the unauthorized publication of Itar–Tass articles in Russia would, under Russian law, infringe on the rights of Itar–Tass Russian News Agency, because the agency possesses exclusive rights under Russian copyright law. Therefore, the defendants' concededly unauthorized republication of Itar–Tass articles should be enjoined, because it is in violation of Russian law, and therefore a violation of United States law, because the works are Berne Convention works.

Article 11, which is referred to in Article 14 as governing the rights of newspapers, is entitled "Copyright of Compilers of Collections and Other Works." Section 2 provides that:

> The exclusive right to exploit encyclopedias, encyclopedic dictionaries, collections of scientific works—published in either one or several installments—newspapers, reviews and other periodical publications shall belong to the editor thereof. The editor shall have the right to mention his name or to demand such mention whenever the said publications are exploited.
>
> The authors of the works included in the said publications shall retain the exclusive rights to exploit their works independently of the publication of the whole work.

Like Article 14, Article 11 thus provides for the vesting of exclusive rights in a party other than an author, in this instance an "editor" or, as Professor Pechota testified, offering another translation, a "publisher." The scope of the copyright and exclusive rights provided by Article 11 to a publisher differs significantly from the scope of the

---

10. Article 16 defines the "exclusive right to exploit." It provides, in part, that:
 1. The author shall enjoy the exclusive right to exploit his works in any form and by any means.
 2. The author's exclusive right to exploit the work shall be construed to mean the right to perform or authorize the following acts:
 —reproduction of the work (right of reproduction) . . .

11. Article 14, ¶ 2 provides that:

The exclusive right to exploit the service-related work shall belong to the person to whom the author is bound by employment relations (employer), unless otherwise provided in the contract concluded by the said person with the author.

The amount of the remuneration of the author for each form of use of the service-related work, and the manner of the payment thereof, shall be specified in the contract concluded by the author and employer.

rights of the individual authors of works included in such a publication.[12] Both experts agreed that Section 2 of Article 11 gives publishers a right to exploit the whole publication while the individual authors of the works retain the exclusive rights to exploit their works independently of the publication as a whole.

Professor Pechota testified that there has been much scholarly debate in Russia over what constitutes a publisher's right in a work as a whole. He testified that his opinion was that a publisher's right in a work as a whole should be deemed to be infringed whenever the allegedly infringing activity is sufficient to interfere with the publisher's interest in the integrity of the work, and that as against a third party infringer, rather than the author of an article, the newspaper would have sufficient interest to prevent such infringement. The Court finds this analysis persuasive. It is not necessary on this motion to determine how much copying would constitute an infringement with the integrity of the work as a whole. It is clear here that the plaintiff has not copied and does not purport to seek to continue to copy an individual article. Rather, the plaintiff has copied and seeks to continue to copy the creative effort of the newspapers in the compilation of articles including numerous articles for the same issues, together with headlines and photographs. As the plaintiff argued, it cannot be the law that an infringer must copy the entire newspaper, magazine, or encyclopedia before the publisher's exclusive rights are interfered with and it has the ability to sue to enjoin such interference.

In this case the continual, knowing, and wilful copying of the news organization plaintiffs' works by defendants Russian Kurier, Inc. and Oleg Pogrebnoy rose to the level of infringing the plaintiffs' interests in their works as a whole. The continued exploitation of compiled articles demonstrated that these defendants were not merely infringing upon the interest of the authors' of the articles in their works, but upon the interests and efforts of the newspapers in compiling articles and upon the works as a whole. As the evidence demonstrated, with regard to particular compiled works, these defendants often copied more than one article from a given issue and copied photographs and headlines with their accompanying articles, thus infringing on the newspapers' exclusive rights under Russian law to exploit their works as a whole.

Another means by which a news organization may acquire exclusive rights under Russian law is by contract. A reporter may

12. In his affidavit in opposition to the preliminary injunction, the defendants' expert on Russian copyright law, Professor Peter B. Maggs, cited several authorities for the proposition that a compiler does not possess a rights to the individual articles compiled. The Bratus and Sadikov commentary, relied on by the plaintiffs' expert as well as the defendants', states:

The organization-legal person owns the copyright to the publication as a whole. Copyright is retained in full by the authors of the works included in such a publication. This means that they have the right to use the by the [sic] procedure established by law. The legal person, if it wishes to republish its publication that is the object of its copyright must receive the permission of the authors of the works included in it.

Maggs Aff. in Opp. at 3. Copyright in the Periodical Press, by V.L. Chertkov, states:

The question of the right to reprint materials is related to the question of the right of authorship of legal persons. Often we encounter announcements in journals that reprinting of articles from these journals is not allowed. However, "the consent of the editors of a journal to the reprinting individual articles is not required at all, since the copyright to each individual article belongs to the author. Moreover, from one journal, all the articles may be reprinted—one or several in various journals. Even in this case the consent of the editors of the journal to the reprinting is not required." [footnote to V.G. Kamyshev, Prava avtorov literaturnkykh proizvedenii (Rights of Authors of Literary Works) (Moscow, 1972), p. 17.] One should not forget that the legal person has the copyright to the issue of the newspaper or journal as a whole and that reprinting of the whole issue is impractical.

Id. at 4. Finally, Copyright Law of Russia, by A.P. Sergeev, states that, "It is completely understandable that the copyright of a compiler extends namely to the collection as such but in no way to the works included in the collection." Id.

The plaintiff's expert affirms, with respect to exclusive rights of exploitation, that, "In accordance with this provision [article 11, section 2], a publisher of a newspaper or other periodical has exclusive rights of use of the publication as a whole, while authors of works included in such a publication retain exclusive rights of use of their works independently from the publication as a whole." Pechota Suppl. Aff. in Supp. at 2–3.

transfer his rights to his work to his employer by an Author's Agreement. *See* Article 30. There was extensive testimony that reporters do transfer their rights to their newspaper publishers to exploit their articles. Moreover, there was evidence from the Chief Counsel of Moscow News that it is the practice of Russian newspapers and the other publishing organizations to conclude oral agreements with authors by which the authors "automatically transfer exclusive rights to the use of their materials and the right to forbid the use of these materials by other persons." Decl. of E. Gulieva, dated April 28, 1995. The need for greater informality in the form of authors' agreements in fast paced periodicals is recognized in Russian law. While authors' agreements generally must be concluded in written form, under Article 32(1) of the Russian Copyright Law, an author's agreement for use of a work in a periodical publication may be oral.

Nevertheless, this is not a convenient practice. Article 31 sets forth "Conditions Governing the Author's Contract." Most notably, it contains provisions that make it impossible for a newspaper to contract for the rights to a reporter's future articles, hence necessitating a separate contract for each article produced:

> 5. The author's contract may not relate to exploitation rights arising in connection with works that the author may create in the future ...

> 7. Those clauses of an author's contract that are contrary to the provisions of this Law shall be deemed invalid.

In the circumstances of this case, the difficulty of an effective author's agreement for each article in a periodical supports the publisher's interest in being able to enjoin systematic, wholesale infringement of the articles that appear in its publication. The defendants argue that the Russian law has effectively created a massive loophole through which they can drive their publication. Author's agreements cannot cover future articles and the publishers cannot protect less than their entire publication, they argue. Therefore, publishers cannot prevent wholesale infringement and it would be difficult if not impossible for individual authors to sue. The defendants hold out the prospect that authors' organizations can be set up under Russian law, but they quickly point out that no such organizations have been established in Russia, and it is certainly questionable whether such organizations were ever intended to cover news reporters. In any event, the law should be interpreted reasonably to enforce the rights created and protected by the law. The defendants' interpretation furthers no articulated interest protected by the law and indeed is manifestly at odds with the protection of intellectual property interests at the heart of the legislation.

## IV.

■ The foregoing establishes the likelihood that the plaintiff news organizations will succeed in showing their entitlement to protection under Russian copyright law and thus the likelihood that they will be treated as having rights under United States copyright law pursuant to the Berne Convention. There is no applicable exception to the protectability of the plaintiffs' works.

Section 107 of Title 17 of the United States Code contains a legislative endorsement of the doctrine of "fair use," which is an exception to the otherwise exclusive rights of copyright holders defined in § 106.[13] The Su-

---

13. Section 107 provides that:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is

preme Court has characterized § 107 as identifying "various factors that enable a Court to apply an 'equitable rule of reason' analysis to particular claims of infringement." *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 448, 104 S.Ct. 774, 792, 78 L.Ed.2d 574 (1984) (citation omitted). In *Sony,* the Court found that commercial use of copyrighted material is presumptively unfair, because "[t]he purpose of copyright is to create incentives for creative effort," and a commercial use presumably will have an effect upon the potential market for or value of the copyrighted work and will thus diminish these incentives. *Id.,* 464 U.S. at 450–51, 104 S.Ct. at 793; *see also American Geophysical Union v. Texaco,* 37 F.3d 881, 890 (2d Cir. 1994) (finding that if a "use can fairly be characterized as a form of 'commercial exploitation,'" then the use is not a fair use) (collecting cases). The court defined a commercially exploitative use as one in which "the copier directly and exclusively acquires conspicuous financial rewards from its use of the copyrighted material." *Id.* This is clearly such a case and therefore no fair use exception is warranted.

Even applying all of the fair use factors, there could be no way to justify the wholesale, systematic copying demonstrated by the record in this case. Numerous articles were copied verbatim or substantially verbatim for the commercial use of a newspaper which was competing with the defendant publications. This was not for a non-profit organization. There was evidence that newspaper dealers stopped carrying the plaintiffs' publications and sold the defendants'.

Similarly, in *Wainwright Securities, Inc.,* the Court of Appeals for the Second Circuit affirmed the issuance of a preliminary injunction where the defendants were infringing on the copyrights of the plaintiff's copyrighted research reports by publishing abstracts of them in a weekly newspaper. *Wainwright,* 558 F.2d at 94, 97. The defendants argued

that they were merely reporting on the research reports and were not infringing on the copyrights. *Id.* The court of appeals rejected this argument, because it found that "[T]he appellants did not bother to distinguish between the events contained in the reports and the manner of expression used by the Wainwright analysts.... [T]he Transcript appropriated almost verbatim the most creative and original aspects of the reports, the financial analyses and predictions, which represent a substantial investment of time, money and labor." *Id.* The court concluded:

> [T]he appellants' use of the Wainwright reports was blatantly self-serving, with the obvious intent, if not the effect, of fulfilling the demand for the original work. This was not legitimate coverage of a news event; instead it was, and there is no other way to describe it, chiseling for personal profit.

*Id.* at 96–97. This case is similar.[14]

## V.

■ The Court has found that the plaintiffs have shown a likelihood of success on their claim for copyright infringement. However, even if the plaintiffs had only shown sufficiently serious questions going to the merits to make them a fair ground for litigation, they would still be entitled to injunctive relief, because the balance of the hardships tips decidedly in their favor. *See Blum,* 18 F.3d at 1010 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979)).

Defendants Russian Kurier, Inc. and Oleg Pogrebnoy admit that they have no rights in the articles that they have been copying. On the other hand, the plaintiffs have, at the very least, a substantial claim to rights that would prohibit the defendants' copying. They have also demonstrated that they are harmed by the copying of articles from their

---

made upon consideration of all the above factors.
17 U.S.C. § 107.

**14.** United States law determines whether there was fair use in the United States. *See Subafilms, Ltd. v. MGM–Pathe Comm. Co.,* 24 F.3d 1088, 1097 (9th Cir.1994), *cert. denied,* —— U.S. ——,

115 S.Ct. 512, 130 L.Ed.2d 419 (1994). Even under Russian law, there would not be fair use in this case, because, among other reasons, the right of reproduction was expressly reserved. *See* Article 19 of the Russian Copyright Law. See also, Aff. of Pratislav Pechota, ¶ 9, sworn to April 30, 1995.

publications. The balance of the equities tips decidedly against the defendants. The defendants' position is that although they are violating the copyright rights of individual authors, they should not be held accountable in this action because it is only the individual authors of the news articles who possess rights enforceable against them. The unclean hands of defendants Russian Kurier, Inc. and Oleg Pogrebnoy tip the balance of the equities strongly against them. They have no right to copy the articles and assert none.

## VI.

For the foregoing reasons, the plaintiffs are entitled to a preliminary injunction restraining the defendants from further copying and sale of the news organization plaintiffs' works, excepting the works of plaintiffs Express Gazeta and Nezavisimaya Gazeta. The Court will issue an order enjoining defendants Russian Kurier, Inc. and Oleg Pogrebnoy, and their officers, directors, and agents. However, defendants Sverdlov, Inc., Veniamin Sverdlov, and Linco Printing will not be enjoined, because the plaintiffs did not establish at the preliminary injunction hearing that any of these defendants knowingly participated infringing the copyrights of the articles originally published by the plaintiffs. Moreover, the preliminary injunction will be effective by enjoining the defendants Pogrebnoy and Russian Kurier, Inc. from violating the copyrights. The bond for the injunction will be set at $50,000, which the Court finds to be a fair and adequate bond at this time to insure the enjoined defendants against any damages they may suffer as a result of being wrongfully enjoined, taking into account the expected length of the preliminary injunction, the $600,000 annual revenues of Kurier, and the strength of the case against the defendants. The defendants advised the Court that, despite the temporary restraining order, they had been able to continue to publish their newspaper, so that the only effect of the injunction is to prevent them from the unauthorized copying of the defendants' publications. A $10,000 bond is in effect in connection with the temporary restraining order. To assure continuity in the injunction and to avoid any argument that the injunction does not continue in effect, the $10,000 bond from the temporary restraining order is sufficient and will remain in effect. However, the continuation of the preliminary injunction is conditioned on the plaintiff posting an additional $40,000 bond by Monday, May 22, 1995 at 5:00 p.m.

**SO ORDERED.**

Appendix A to OPINION OF MAY 13, 1995 95–cv–2144
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ITAR–TASS RUSSIAN NEWS AGENCY,
ITAR–TASS USA, INC.,
ARGUMENTY i FAKTY, MOSKOVSKIE NOVOSTI,
KOMSOMOLSKAYA PRAVDA,
FROMER ASSOCIATES, INC., EXPRESS GAZETA,
NEZAVISIMAYA GAZETA, AND THE
UNION OF JOURNALISTS OF RUSSIA,

Plaintiffs,

-against-

Case No. 95 Civ 2144

PLAINTIFFS' EXHIBIT CHART AS OF 5/12/95

RUSSIAN KURIER, INC., AKA KURIER INC.
AKA KURIER RUSSIAN WEEKLY NEWSPAPER
OLEG POGREBNOY, SVERDLOV, INC., AKA
SVERDLOV VIDEO, VENIAMIN SVERDLOV,
LINCO PRINTING, JOHN & JANE DOES 1–10

Defendants,

LEGEND OF ABBREVIATIONS
AIF = Argumenty i Fakty
KP = Komsomolskaya Pravda
MN = Moscow News/Moskovskie Novosti
IT = Itar–Tass News Agency
NA = Not applicable
Y = Yes
N = No
V = Verbatim
SC = Small Changes

| Exhibit # | Date 1st Published | Where Published | Date in Kurier | Kurier version Verbatim or same but w/small changes? | Same Type Style? | Same Photo? | Same Writer in By-line? |
|---|---|---|---|---|---|---|---|
| 1 | NA | NA | NA | NA | NA | NA | NA |
| 2 | NA | NA | NA | NA | NA | NA | NA |
| 3 | 3/21/95 | AIF | 3/28/95 | V | Y | Y | N |
| 4 | 3/21/95 | MN | 3/28/95 | V | Y | Y | N |
| 5 | 3/19/95 | MN | 3/28/95 | V | Y | Y | N |
| 6 | 3/19/95 | MN | 3/28/95 | V | Y | Y | N |
| 7 | 3/16/95 | KP | 3/28/95 | V | Y | Y | Y |
| 8 | 3/14/95 | KP | 3/21/95 | SC | Y | NA | Y |
| 9 | 3/20/95 | KP | 3/21/95 | SC | Y | NA | N |
| 10 | 3/20/95 | KP | 3/21/95 | SC | Y | NA | N |
| 11 | 3/20/95 | KP | 3/21/95 | SC | Y | Y | Y |
| 12 | 3/20/95 | KP | 3/21/95 | SC | Y | Y | N |
| 13 | 3/20/95 | KP | 3/21/95 | SC | Y | Y | Y |
| 14 | 3/17/95 | KP | 3/21/95 | V | Y | Y | Y |
| 15 | 3/20/95 | KP | 3/21/95 | SC | Y | Y | N |
| 16 | 3/20/95 | KP | 3/21/95 | SC | Y | Y | Y |
| 17 | 3/20/95 | KP | 3/21/95 | SC | Y | SC | Y |
| 18 | 3/20/95 | KP | 3/21/95 | SC | Y | NA | Y |
| 19 | 3/20/95 | KP | 3/21/95 | SC | Y | Y | Y |
| 20 | 3/20/95 | KP | 3/21/95 | SC | Y | NA | Y |
| 21 | 3/20/95 | KP | 3/21/95 | V | Y | Y | Y |
| 22 | 3/16/95 | IT | 3/21/95 | SC | N | NA | N |
| 23 | 3/17/95 | IT | 3/21/95 | SC | NA | NA | N |
| 24 | 11/1/95 | AIF | 11/3/94 | V | Y | Y | Y |
| 25 | 9/20/94 | AIF | 9/22/94 | V | Y | Y | Y |
| 26 | 11/1/94 | AIF | 11/3/94 | V | Y | Y | Y |
| 27 | 9/20/94 | AIF | 9/22/94 | V | Y | N | N |
| 28 | 25/10/94 | AIF | 11/3/94 | V | Y | Y | Y |
| 29 | 9/13/94 | AIF | 9/22/94 | V | Y | Y | Y |
| 30 | 7/19/94 | AIF | 7/28/94 | V | Y | Y | N |
| 31 | 8/2/94 | AIF | 8/11/94 | V | Y | Y | N |
| 32 | 7/12/94 | AIF | 7/21/94 | V | Y | Y | N |
| 33 | 8/19/94 | KP | 8/25/94 | SC | Y | N | N |
| 34 | 8/16/94 | KP | 8/94 | SC | Y | Y | Y |
| 35 | 8/16/94 | KP | 8/25/94 | V | Y | Y | N |
| 36 | 8/16/94 | KP | 8/25/94 | V | Y | NA | Y |
| 37 | 8/18/94 | KP | 8/25/94 | V | Y | NA | Y |
| 38 | 8/15/94 | KP | 8/94 | SC | Y | N | Y |
| 39 | 8/22/94 | KP | 8/25/94 | SC | Y | N | Y |
| 40 | 8/18/94 | KP | 8/25/94 | SC | Y | N | Y |
| 41 | 8/18/94 | KP | 8/25/94 | SC | Y | Y | Y |

| Exhibit # | Date 1st Published | Where Published | Date in Kurier | Kurier version Verbatim or same but w/small changes? | Same Type Style? | Same Photo? | Same Writer in By-line? |
|---|---|---|---|---|---|---|---|
| 42 | 8/18/94 | KP | 8/25/94 | SC | Y | N | Y |
| 43 | 2/7/95 | AIF | 2/9/95 | SC | Y | Y | Y |
| 44 | 1/24/95 | AIF | 2/2/95 | SC | Y | Y | N |
| 45 | 1/22/95 | MN | 2/2/95 | V | Y | Y | Y |
| 46 | 1/29/95 | AIF | 2/2/95 | V | Y | Y | Y |
| 47 | 2/9/95 | KP | 2/16/95 | SC | Y | N | Y |
| 48 | 2/8/95 | AIF | 2/16/95 | SC | Y | NA | Y |
| 49 | 10/18/95 | AIF | 11/3/95 | V | Y | Y | Y |
| 50 | 2/9/95 | KP | 2/16/95 | SC | Y | Y | Y |
| 51 | 2/9/95 | KP | 2/16/95 | SC | Y | Y | Y |
| 52 | 1/25/95 | KP | 2/9/95 | V | Y | Y | Y |
| 53 | 1/23/95 | MN | 2/2/95 | SC | Y | SC | Y |
| 54 | 2/13/95 | KP | 2/22/95 | SC | Y | NA | N |
| 55 | 10/4/94 | AIF | 10/13/95 | SC | Y | Y | Y |
| 56 | 10/4/94 | AIF | 10/13/94 | V | Y | Y | Y |
| 57 | 1/24/95 | AIF | 2/2/95 | V | Y | Y | Y |
| 58 | 2/7/95 | AIF | 2/16/95 | V | Y | Y | Y |
| 59 | 2/13/95 | KP | 2/16/95 | SC | Y | Y | Y |
| 60 | 2/13/95 | KP | 2/16/95 | SC | Y | Y | Y |
| 61 | 9/27/94 | AIF | | V | Y | Y | N |
| 62 | 3/10/95 | KP | 3/28/95 | V | Y | Y | Y |
| 63 | 3/21/95 | MN | 4/4/95 | SC | Y | Y | Y |
| 64 | 4/3/95 | KP | 4/4/95 | SC | Y | Y | N |
| 65 | 3/17/95 | MN | 3/21/95 | V | Y | Y | Y |
| 66 | 4/5/95 | MN | 4/11/95 | SC | Y | Y | N |
| 67 | 3/20/95 | MN | 3/28/95 | SC | Y | Y | Y |
| 68 | 3/19/95 | MN | NA | NA | NA | NA | NA |
| 69 | Issue of Kurier | | 4/18/95 | NA | NA | NA | NA |
| 70 | Letter to editor | | 4/11/95 | NA | NA | NA | NA |
| 71 | Decision of Court | | 10/22/94 | NA | NA | NA | NA |
| 72 | Affidavit of Guli-ieva | | 4/28/95 | NA | NA | NA | NA |
| 73 | Issue of Kurier | | 4/21/95 | NA | NA | NA | NA |
| 74 | Receipt | | 4/21/95 | — | — | — | — |
| 75 | Masthead KP | | 2/9/95 | NA | NA | NA | NA |
| 76 | Affidavit of Professor A.P. Sergeev | | | NA | NA | NA | NA |
| 77 | | | | | | | |
| 78 | | | | | | | |
| 79 | | | | | | | |
| 80 | | | | | | | |
| 81 | | | | | | | |
| 82 | | | | | | | |
| 83 | | | | | | | |
| 84 | | | | | | | |
| 85 | | | | | | | |
| 86 | | | | | | | |
| 87 | | | | | | | |
| 88 | | | | | | | |