**RUSSIAN KURIER, INC., Plaintiff,**

v.

**RUSSIAN AMERICAN KURIER, INC., and Jeffrey Katz, Defendants.**

No. 95 Civ. 4677 (JGK).

United States District Court, S.D. New York.

Sept. 28, 1995.

Bohmart & Sacks, P.C. by Joel K. Bohmart, New York City, for plaintiff.

Nelson M. Stern, New York City, for defendants.

### OPINION & PRELIMINARY INJUNCTION

KOELTL, District Judge:

Russian Kurier, Inc., publisher of the newspaper Kurier, seeks a preliminary injunction enjoining Russian American Courier, Inc. and its principal owner, Jeffrey Kats,[1] publishers of the newspaper New York Kurier, from printing any newspaper using the word "Kurier" in its title or using

---

1. The complaint identifies the defendants as "Russian American Kurier, Inc." and "Jeffrey Katz," but the defendants have informed the Court that the correct spelling of their names is "Russian American Courier, Inc." and "Jeffrey Kats," and the plaintiff has expressed a willingness to amend the caption.

any confusingly similar word.[2] For the reasons stated below, the motion for a preliminary injunction is granted.

## I.

After reviewing the parties' submissions including the affidavits submitted by both sides, the Court held a hearing and heard oral argument. None of the parties offered any additional evidence. The Court now makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

Both the plaintiff's newspaper, Kurier, and the defendants' newspaper, New York Kurier, are printed in Russian and cater to the Russian–American community in New York City. The plaintiff has published Kurier since 1992. The paper, which sells for fifty cents a copy, has achieved a circulation of 20,000 copies per week and monthly revenues from advertising and sales in excess of $40,000. The defendants have published New York Kurier since March 1995. It sells for twenty-five cents a copy and on several occasions has obtained a circulation of 10,000 copies per week. Authentic examples of the masthead of each paper have been submitted by the defendants. (Kats Aff. Ex. 1 (New York Kurier), Ex. 2 (Kurier).)

The plaintiff has submitted affidavits from five individuals who claim to have mistaken New York Kurier for Kurier. On the basis of these affidavits, the Court finds that there has been some actual confusion as to the origin of New York Kurier among consumers.[3]

2. The masthead of both papers is printed in the Russian language.

3. The defendants have challenged the validity of the affidavits on various grounds. However, the affidavits appear to have been validly executed and are some small evidence of actual confusion, although obviously less impressive than a survey. In any event, as explained below, there is a sufficient showing in this case of a likelihood of consumer confusion, apart from the plaintiff's showing of actual confusion, to warrant preliminary injunctive relief.

4. *See Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1220 (2d

The defendants have submitted the masthead of another Russian language newspaper published in New York that uses the word "kurier" in its title. (Kats Aff. Ex. 4.) The plaintiff credibly affirms that it has granted this newspaper permission to use the mark.

## II.

■ To prevail on a motion for a preliminary injunction, the party requesting relief must show:

(1) the likelihood of irreparable injury, and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the movant's favor.

*Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 967 (2d Cir.1995); *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir.1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). For the reasons stated below, the Court finds that the plaintiff has shown a likelihood of success on the merits, irreparable harm, and that the balance of the hardships tips decidedly in its favor.

## III.

A. **Likelihood of Success—Lanham Act § 43(a):**

■ The plaintiff has shown a likelihood of success on its claim for trademark infringement pursuant to § 43(a)(1) of the Lanham Act. Section 43(a)(1) provides a means by which unregistered marks, names, and trade dress may be protected.[4] It states, in relevant part, that:

Cir.1987) (finding that § 43(a) is "the only provision in the Lanham Act that protects an unregistered mark" and that "[i]ts purpose is to prevent consumer confusion regarding a product's source, ... and to enable those that fashion a product to differentiate it from others on the market"); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, ——, 112 S.Ct. 2753, 2761, 120 L.Ed.2d 615 (1992) ("[T]he Court interprets this section [§ 43(a)] as having created a federal cause of action for infringement of an unregistered trademark or trade dress and concludes that such a mark or dress should receive essentially the same protection as those that are registered.") (Stevens, J., concurring).

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1). The complaint also seeks relief on the basis of New York deceptive trade practices statutes, N.Y.Gen.Bus.Law §§ 349, 350, and the New York common law of unfair competition and trademark infringement. It is not necessary to address these claims because the plaintiff has shown a clear likelihood of success on its claim under the Lanham Act.

■ To show a likelihood of success on a claim for trademark infringement under § 43(a), a plaintiff must, as a preliminary matter, show that the mark in question is entitled to protection. A term's eligibility for protection is dependent on its classification as generic, descriptive, suggestive, or arbitrary. *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 212 (2d. Cir.1985). Generic terms, those terms that are common descriptive names of articles or substances, are ineligible for any trademark protection. *Id.* Descriptive terms, terms describing the qualities of a product in ordinary language, are entitled to protection only when it is shown that they have acquired a secondary meaning. *Id.* at 212–13. Suggestive terms, terms requiring imagination, thought, and perception in order to reach a conclusion as to the nature of the goods, are eligible for protection without proof of secondary meaning as are arbitrary or fanciful marks. *Id.* at 213.

■ The Russian word "kurier" is a suggestive mark to speakers of Russian and English alike. To American readers, it sounds like the english word "courier," a word that is in fact a possible translation. Both parties have submitted numerous dictionary entries defining both "kurier" and "courier." The entries indicate that the Russian and English words alike refer to a messenger or other means of sending information or documents. None of the definitions provided by the parties indicate that either the word "courier" or "kurier" denotes a newspaper, that either word is commonly used to refer to newspapers, or that either word describes the qualities of a newspaper. In arguing that "kurier" is a generic term commonly used to refer to newspapers, the defendants rely on a definition of the English word "courier" which states that it denotes "any means of carrying news, messages, etc., regularly," and definitions of the Russian word "kurier" that allegedly define it as referring to someone who brings information, papers, or news. The mark "Kurier" suggests the good with which it is associated in this case, newspapers, but only by imaginative association—a newspaper is itself a courier, a messenger carrying information expeditiously.

Defendant Kats alleges one reason he chose to use the name "Kurier" was that the train that delivered mail in Russia at the turn of the century was referred to as the Kurier. He explains that the word "kurier" thus came to mean "speedy train" and that, "I thought that a word that meant 'speedy train' presented a good name for a newspaper." (Kats Aff. ¶ 7.) This is further evidence that the mark "kurier" is suggestive, that its relation to the good to which it is affixed, newspapers, is discernible only by an imaginative act of association.

■ Once a mark is found to be protected by the Act, the central question, as in a suit alleging the infringement of a registered mark, is whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of the defendant's mark." *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 390–91 (2d Cir.1995) (quoting *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991

F.2d 1072, 1077 (2d Cir.1993)) (citation omitted). Proof of actual confusion is not necessary. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1227 (2d Cir.1987); *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.*, 906 F.2d 1202 (7th Cir.1990). However, proof of actual confusion is probative of a likelihood of confusion. *See Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 611 (7th Cir.1965); *David Sherman Corp. v. Heublein, Inc.*, 340 F.2d 377, 380 (8th Cir.1965).

■ In *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492 (2d Cir.1961), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), the Court of Appeals set forth eight factors that courts are to consider when determining whether there is a likelihood of confusion in an infringement case involving non-competitive goods or services. The court has since held that these factors are equally applicable to cases involving competing goods. *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486, 490 (2d Cir.1988). In *Polaroid*, the court declared that:

> [T]he prior owner's chance of success is a function of many [v]ariables; the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities— the court may have to take still other variables into account.

*Polaroid*, 287 F.2d at 495. The decision as to whether a mark infringes requires a "comprehensive analysis of all the relevant facts and circumstances." *See Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 968 (2d Cir.1981). The Court of Appeals has instructed that:

> [T]he *Polaroid* factors are not, of course, "exclusive" and should not be applied "mechanically." No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand.

But it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why. The steady application of *Polaroid* is critical to the proper development of trademark law, for it is only when the *Polaroid* factors are applied consistently and clearly over time that the relevant distinctions between different factual configurations can emerge.

*Arrow Fastener*, 59 F.3d at 400 (citations omitted). When the issue of likelihood of confusion is in doubt, the question will be resolved in favor of the senior user. *Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903, 909 (3rd Cir.1952); *E.I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F.Supp. 502, 510 (E.D.N.Y.1975); *Lambert Pharmacal Co. v. Bolton Chem. Corp.*, 219 F. 325, 326 (D.C.N.Y.1915) (Hand, J.). In this case, there is an obvious likelihood of confusion, which is further confirmed by analysis of the eight *Polaroid* factors.

1. The "strength" of a mark is a measure of its "tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Arrow Fastener*, 59 F.3d at 391 (quoting *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)). Even assuming that the "Kurier" mark is not a strong mark, because there is another paper in the New York area using the word "Kurier" in its title,[5] there is a high likelihood of consumer confusion given the strength of the other *Polaroid* factors in this case. The mark is relatively strong due to its suggestiveness.

2. There is a high degree of similarity between "Kurier" and "New York Kurier." People in New York City looking for a newspaper called "Kurier" are likely to believe that they have found it when they find a paper called "New York Kurier." The similarity is heightened by the fact that on the masthead of the defendants' paper the words "New York" are printed in a different typeface than the word "Kurier," thus causing the word "Kurier" to stand out. The words "New York" are in a smaller typeface than

---

**5.** While defendant Kats alleges that other newspapers using the word "kurier" in their titles are published in California and Boston, the relevant inquiry is confusion in New York where the two papers at issue are sold.

the word "Kurier" and are printed in black whereas the word "Kurier" is printed in orange. The fact that the defendants' paper uses color and a train logo in its masthead, whereas the plaintiff's does not, is not sufficient to prevent confusion as to the paper's origin. Moreover, the similarity of the names breeds confusion on at least two levels—potential readers and potential advertisers. A reader may well ask for the newspaper "Kurier" and advertisers may well seek to advertise in "Kurier" without distinguishing between the two different papers.

3. With regard to the proximity of the products, not only are identical goods involved, newspapers, but both products are within the same narrow subclassification of the good, newspapers published in New York City in the Russian language. Thus, consumers are likely to be confused as to the source of the papers. *See Arrow Fastener,* 59 F.3d at 396 (2d Cir.1995) ("[P]roduct proximity relates to the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves.") (citations and internal quotation marks omitted).

4. Due to the proximity of the products, there is no gap for the defendants to bridge.

5. As explained above, no actual consumer confusion need be shown to justify a finding of a likelihood of confusion, although the presence of actual confusion obviously supports such a finding. The plaintiff has shown that some consumers have been confused as to the origin of the defendants' newspaper, mistaking it for the plaintiff's.

6. The plaintiff claims that the defendants acted in bad faith in adopting their mark. Bad faith is shown by demonstrating that the "defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Arrow Fastener,* 59 F.3d at 397 (citation omitted). A defendant's intention to confuse weighs in favor of finding a likelihood of confusion. *See Polaroid,* 287 F.2d at 495. Despite defendant Kats' allegations to the contrary, there is every reason to believe that the defendants adopted their mark with the intention of capitalizing on the plaintiff's success. At the very least they must have been aware of the existence of the plaintiff's paper. Moreover, the defendants' strained suggestions about how the name Kurier was chosen resemble false exculpatory statements rather than truthful explanations.[6]

7. The quality of the products is not readily distinguishable to the casual observer, given that each paper is printed in similar fashion on similar newspaper stock with apparently similar coverage. The defendants claim that consumers distinguish between their paper and the plaintiff's because the plaintiff's paper is allegedly anti-Semitic whereas the defendants' is not. This allegation is unsubstantiated and, even if true, would not significantly lessen the likelihood of confusion.

8. The sophistication of the buyers is relevant in this case in that a newspaper is a product that may be purchased without careful scrutiny, thus increasing the likelihood of confusion. Moreover, even consumers who

---

**6.** Although proof of a likelihood of confusion is usually the central inquiry in a Lanham Act suit, the Court of Appeals has held that under the second-comer doctrine, a claim also arises under the Lanham Act for a second-comer's "passing off" of goods by false representation of them as those of a trademark owner, even if the goods are not confusingly similar. *Thompson Medical,* 753 F.2d at 214–15; *see also, Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254 (2d Cir. 1987) ("Intentional copying gives rise to a presumption of a likelihood of confusion."); *Warner Bros. Inc. v. American Broadcasting Cos., Inc.,* 720 F.2d 231, 246–47 (2d Cir.1983); *Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 689 F.2d 1127, 1136 (2d Cir.1982); *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.,* 618 F.2d 950, 954 (2d

Cir.1980); *My–T Fine Corp. v. Samuels,* 69 F.2d 76, 77 (2d Cir.1934) (holding that intentional copying "raises a presumption that customers will be deceived"). In such a case, the wrong lies in the misrepresentation of the source of the goods. *Thompson Medical,* 753 F.2d at 215. The second-comer doctrine applies, however, only in cases "where there exists a highly distinctive mark of the senior user and proof of bad faith by the junior user." *Id.* at 218. As explained above, it is not necessary to determine the plaintiff's chance of proving bad faith under either the *Polaroid* analysis or the second-comer doctrine because the strength of the remaining *Polaroid* factors warrants a finding of a likelihood of confusion.

distinguish the plaintiff's newspaper from the defendants' are not likely to realize that the origin of the two newspapers is different. Similarly, advertisers who seek to advertise in "Kurier" may well be unaware of the two wholly separate papers.

## B. Defenses:

The defendants have raised numerous defenses to the plaintiff's claims, none of which are sufficient to negate the plaintiff's showing of a likelihood of success on its Lanham Act claim.

▮▮▮ The defendants allege that the plaintiff copies and publishes works from other sources, often in violation of the law, and that it engages in illegal anti-competitive practices, and that therefore its unclean hands preclude preliminary injunctive relief. This Court has in fact entered a preliminary injunction prohibiting the plaintiff from copying from certain other Russian newspapers and a wire service. *See Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 886 F.Supp. 1120 (S.D.N.Y.1995). Nevertheless, these allegations are not sufficient to establish a defense of unclean hands. The equitable defense of unclean hands applies only when the inequitable conduct complained of by the defendant relates to the claim asserted against it. *See Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814–15, 65 S.Ct. 993, 997–98, 89 L.Ed. 1381 (1945) ("[W]hile equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." (citation omitted)); *A.H. Emery Co. v. Marcan Prods. Corp.*, 389 F.2d 11, 17–18 (2d Cir.), *cert. denied*, 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968). For example, the defense may be applied when the allegedly infringed trademark is deceptive in some manner. *See Clinton E. Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282 (1903) (denying trademark protection to producer of product marked "Syrup of Figs" which contained no figs). Courts have generally refused, however, to allow the defense of unclean hands in instances in which the trade-

mark was not itself deceptive, but was used in a deceptive manner, such as false advertisement. *See, e.g., Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir.1987); *Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao & Chocoladefadrieken v. Kosloff*, 45 F.2d 94, 96 (2d Cir.1930). Similarly, when defendants have alleged that a plaintiff used a trademark to violate the antitrust laws, courts have generally required the defendant to prove that the trademark was "the basic and fundamental vehicle required and used to accomplish the violation." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F.Supp. 1309, 1315 (S.D.N.Y.1969). Assuming that the plaintiff has illegally copied and published works originally published elsewhere, that conduct does not render it subject to the defense of unclean hands because it is collateral to the issue of trademark infringement that is here disputed.

▮▮▮ The other defenses alleged by the defendants are equally meritless. The defendants cannot possibly establish a defense under the First Amendment because an injunction would not prevent them from publishing their newspaper; an injunction would only require them to change its infringing name. They cannot establish a defense of abandonment because there is no evidence that the plaintiff has ever abandoned its mark in any manner. There is no evidence that there has ever been any significant change in the plaintiff's trademark or its product. Neither has the plaintiff been lax in enforcing its rights. In the month after the defendants began publishing New York Kurier, the plaintiff expressed its dissatisfaction with use of the mark "Kurier," and within three months had instituted this lawsuit. Lastly, there is no evidence that the defendants are entitled to any defense of equitable estoppel. The defendants claim that they are entitled to this defense because they altered their masthead in response to the plaintiff's complaints, expecting that the plaintiff would refrain from taking any legal action. There is no evidence that the plaintiff represented that it would not file suit if the defendants' masthead was altered.

## C. *Irreparable Injury:*

In a case brought under § 43(a) of the Lanham Act, a showing of likelihood of confusion is usually sufficient to establish irreparable injury. Such a showing demonstrates that the plaintiff's reputation is in the hands of the defendants pending trial and that the plaintiff's damages will be difficult to measure. In *Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190 (2d Cir. 1971), the Court of Appeals concluded:

Where there is, then, such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows. While an injured plaintiff would be entitled to recover the profits on the infringing items, this is often difficult to determine; moreover, a defendant may have failed to earn profits because of the poor quality of its product or its own inefficiency. Indeed, confusion may cause purchasers to refrain from buying either product and to turn to those of other competitors. Yet to prove the loss of sales due to infringement is also notoriously difficult. Furthermore, if an infringer's product is of poor quality, or simply not worth the price, a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.

*Omega Importing*, 451 F.2d at 1195 (citation omitted) (reversing order denying preliminary injunction).[7] The presumption of irreparable harm attaching to a showing of a likelihood of confusion is negated, however, if the plaintiff has not been diligent in seeking relief. *See Tough Traveler*, 60 F.3d at 968 ("[A]ny such presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief."). In this case, the plaintiff has been diligent both in demanding that the defendants cease and desist from using the mark and in bringing the present lawsuit when the defendants refused to stop.

## D. *Balance of the Hardships:*

If the plaintiff had shown only the existence of sufficiently serious questions going to the merits, but not a likelihood of success, then it would be necessary for it to show a balance of hardships tipping decidedly in its favor in order to obtain preliminary injunctive relief. The plaintiff has in fact shown that the balance tips decidedly in its favor. The plaintiff has shown that it is subject to a threat of irreparable harm, having shown a strong likelihood that the public will be confused as to the origin of the defendants' newspaper and therefore that the plaintiff will lose both readers and advertisers. On the other side of the balance, the defendants will be prevented from using a particular name for their newspaper. Yet, it is a name they adopted long after the plaintiff started to use it. And, the defendants adopted it in an apparent effort to gain advantage in the marketplace, competing directly against the plaintiff which had a right to use that name. Therefore, the balance of hardships tips decidedly in the plaintiff's favor.

## IV.

For the foregoing reasons, the defendants, their officers, agents, servants, employees, attorneys, and those persons acting in concert or participation with them who receive actual notice of this order, are en-

7. *See also Tough Traveler*, 60 F.3d at 967 ("In a trademark case, irreparable injury may be found where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.") (citations and internal quotation marks omitted); *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988) (finding that showing of likelihood of confusion "establishes both a likelihood of success on the merits and irreparable harm"); *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1314 (2d Cir.1987) (finding that showing of likelihood of confusion establishes both requisite likelihood of success on the merits as well as risk of irreparable harm); *General Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 109 (2d Cir.1986); *Power Test Petroleum Distrib., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir.1985) (finding that plaintiff proves irreparable injury if it shows that it will lose control over reputation of its trademark pending trial); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 79 (2d Cir.1985) ("Likelihood of confusion is itself strong evidence that in the absence of an injunction [the moving party] might face irreparable harm.").

joined during the pendency of this action from printing a newspaper with the Russian word "kurier" in its title.

This injunction shall take effect on September 22, 1995 provided that the plaintiff has posted a bond in the amount of $10,000, pursuant to Fed.R.Civ.P. 65(c), no later than 5:00 p.m. on September 20, 1995.

**SO ORDERED.**